

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1018 | **DATE** | 2/3/2003 |
| **CASE TITLE** | TruServ Corporation vs. Chaska Building Center, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. TruServ's motion to dismiss (Doc. 24-1) granted as to Renningers' Count I and Count V. With respect to the remaining counts, Counts II, Count III, and Count IV the motion is granted in part and denied in part. In addition, the court grants TruServ's motion to strike (Doc. No. 24-2) affirmative defenses 1, 2, 3, 4 and 12 but denies motion to strike defenses 5, 10, and 11.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 4 | | **Document Number** |
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | FEB 0 4 2003 | | |
| | Notified counsel by telephone. | | | date docketed | | 51 |
| | Docketing to mail notices. | | | 6.4 | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | 2/3/2003 | | |
| | | | | date mailed notice | | |
| | CTV | courtroom deputy's initials | 03 FEB -3 PM 4: 29 | CTV | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRUSERV CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 1018 |
| | ) | |
| CHASKA BUILDING CENTER, INC., | ) | Judge Rebecca R. Pallmeyer |
| JOHN D. KLINGELHUTZ, RENNINGER | ) | |
| LUMBER COMPANY, INC., DONALD W. | ) | |
| RENNINGER, MICHAEL J. RENNINGER, | ) | |
| GLORIA R. LONG, SUSAN J. McKINNEY, | ) | |
| CARTER TRUE VALUE HARDWARE, INC., | ) | FEB 0 4 2003 |
| CRAIG W. CARTER, KIMBERLEY S. | ) | |
| CARTER, and DANIEL G. STEINACKER | ) | |
| d/b/a STEINACKER & SONS TRUE VALUE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On February 12, 2002, TruServ Corporation filed this lawsuit against Renninger Lumber
Company, Inc., Donald W. Renninger, Michael J. Renninger, Gloria Long, and Susan McKinney,
(hereinafter collectively "Renningers") and other Defendants, claiming breach of contract and
breach of guaranty.[1] TruServ, a cooperative, alleges that Renninger Lumber, a member of the
cooperative, has committed a breach of contract by failing to pay for merchandise and services
provided by TruServ to Renninger Lumber. TruServ has also alleged a claim for "account stated"
based on TruServ's failure to pay for merchandise and services. As against Donald Renninger,

---

[1]    TruServ is a corporation organized under the laws of the state of Delaware and has
its principal place of business in Chicago, Illinois. TruServ functions as a cooperative and
wholesaler for its members, owners of True Value hardware stores. The Renningers operate a True
Value hardware store in Pennsylvania, which is a member of the TruServ Corporation. Renninger
Lumber is a corporation organized under the laws of Pennsylvania with its principal place of
business in Mill Hall, Pennsylvania and Donald Renninger, Michael Renninger, Long and McKinney
are citizens of Pennsylvania. TruServ has claimed that the Renningers breached their obligations
under the agreement with TruServ by failing to pay $151,494.70 that it owes TruServ for
merchandise and services. The court has jurisdiction in this matter under 28 U.S.C. § 1332(a),
because this lawsuit involves a dispute between citizens of different states and TruServ has a good
faith basis for alleging that the amount in controversy exceeds $75,000.

Michael Renninger, Long, and McKinney, TruServ alleges that these Defendants are liable on personal guaranties they gave to TruServ for Renninger Lumber's debts. On April 8, 2002, the Renningers filed an answer to TruServ's complaint in which they raised several affirmative defenses and a five-count counterclaim arising out of TruServ's failure to redeem Defendants' stock in the TruServ Corporation.

In their counterclaim, the Renningers allege that TruServ's dealings constituted (1) breach of contract; (2) fraud; (3) a violation of the Illinois securities laws; (4) breach of fiduciary duty; and (5) a violation of the Renningers' right of recoupment. TruServ has moved to dismiss each of these counterclaims under Rule 12(b)(6). In addition, TruServ moves to strike eight of the Renningers' thirteen affirmative defenses, including the following: (1) TruServ materially breached the Membership Agreement with Renninger Lumber; (2) TruServ's claims are barred by its anticipatory repudiation of the Membership Agreement; (3) TruServ's fraudulent statements and omissions induced Renninger Lumber to enter the Membership Agreement with TruServ and to remain a member; (4) TruServ's fraudulent misrepresentations and omissions induced the Renningers to enter into the personal guaranty agreements; (5) TruServ's claims must be reduced by amounts TruServ owes Renninger Lumber under the Membership Agreement; (10) TruServ's claims are partially barred by Renninger Lumber's claim for recoupment; (11) estoppel; and (12) unclean hands. For the reasons set forth here, TruServ's motion to dismiss is granted in part and denied in part. Its motion to strike the Renningers' affirmative defenses is also granted in part and denied in part.

## FACTUAL BACKGROUND

Renninger Lumber Company, a Pennsylvania corporation, is owned by Donald W. Renninger, Michael J. Renninger, Gloria R. Long and Susan J. McKinney, and operates a True Value Hardware Store located in Mill Hall, Pennsylvania. (Joint and Separate Answer, Affirmative

2

Defenses and Counterclaims of Renninger Lumber Company, Inc., Donald W. Renninger, Michael J. Renninger, Gloria R. Long and Susan J. McKinney ¶¶ 1-2) (hereinafter, "Counterclaim.") TruServ Corporation, Counter-Defendant here, is a Delaware corporation with its principal place of business in Chicago, Illinois. TruServ, a national cooperative, acts as a wholesaler for True Value hardware stores, marketing its merchandise and services exclusively to its members, including the Renningers. (Id. ¶ 1; Renningers' Memorandum in Opposition to TruServ's Motion to Dismiss Counterclaims and Strike Affirmative Defenses (hereinafter, "Memorandum in Opposition,") at 1, 4.) True Value Hardware store owners seeking membership in the TruServ cooperative must sign a contract or Membership Agreement that governs the relationship between the cooperative and its members. (Retail Member Agreement with TruServ Corporation (hereinafter, "Member Agreement"), Exhibit 1 to Counterclaim, at 1-2.) Pursuant to the Agreement, TruServ members own stock in TruServ and benefit from the group billing and purchasing ability of the TruServ cooperative. (Id.) The Renningers became a member of TruServ in 1997 when Cotter and Company ("Cotter") and ServiStar/Coast to Coast, both suppliers of hardware merchandise, merged to form TruServ Corporation. (Counterclaim ¶ 7.)

Prior to 1997, the Renningers were members of Cotter, a Delaware corporation which was a predecessor to TruServ and which, like TruServ, was a cooperative, marketing its merchandise and services to member stores pursuant to a membership agreement. The Cotter membership agreement (a) required members to purchase Class A stock as an initial investment from Cotter, and (b) provided that members would receive dividends from their purchases of merchandise in the form of Class B stock.[2] (Id. ¶¶ 4-6.) The member agreement between Renninger Lumber and Cotter required Cotter to redeem Renninger Lumber's Class A and Class B stock at Renninger

---

[2]     The differences between TruServ Class A and Class B stock are described *infra*, but the parties offer no explanation of the characteristics of Cotter Class A and Class B stock beyond identifying these two classes of stock.

3

Lumber's request for par value. (*Id.* ¶¶ 5-6.)

**The Merger**

In 1996 and 1997, Cotter sought to merge with ServiStar/Coast to Coast, which, like Cotter, was in the business of supplying hardware stores with services and merchandise. (*Id.* ¶ 7.) This merger was approved in 1997 by the Cotter members and resulted in the formation of the TruServ Corporation.[3] (*Id.*) Before the merger vote, all potential members of the new corporation, including the Renningers, were provided with a copy of a TruServ Member Agreement and the TruServ By-Laws.[4] (*Id.* ¶ 9.) The Renningers and the other members voting in favor of the merger were deemed to accept the new agreement and By-Laws, which replaced those of Cotter, and all Cotter stock was converted to TruServ stock. (*Id.* ¶¶ 8-9.) The relationship between TruServ Corporation and its stockholders was to be governed by Delaware general corporate law, TruServ's amended and restated Certificate of Incorporation, and TruServ's By-Laws. (*Id.* ¶ 8.) The TruServ Member Agreement provides that it is to be interpreted under the substantive law of Illinois. (Member Agreement, at 6 ¶1.) The Renningers allege that TruServ and the Board of Directors owe stockholders, including the Renningers, a fiduciary duty that requires TruServ "to act in the best interests of [the Renningers] to avoid acts of self-dealing and conflicts on [sic] interest, and to act with the care that a reasonable director would exercise under similar circumstances." (Counterclaim ¶ 47.)

Under the Member Agreement, TruServ's members are entitled to use the True Value trademark and to benefit from TruServ's group buying power and group billing procedures. (Member Agreement, at 1.) Similar to the earlier arrangement between the Renningers and Cotter, a member in TruServ was required, in addition to signing the Member Agreement, to make

---

[3]     The parties do not provide the specific date that members approved the merger.

[4]     The TruServ Member Agreement and By-Laws are attached to the Counterclaim as Exhibits A and B.

4

an initial capital investment in TruServ of $6,000, in exchange for which the member received 60 shares of Class A Common Stock with a par value of $100 per share. (*Id.* at 2 ¶ 6.) Pursuant to the Member Agreement, TruServ pays patronage dividends to members each year based on "the volume of and margins applicable to merchandise and services purchased by the Member," after deduction of TruServ's business expenses and "[s]uch reasonable reserves for necessary corporate purposes as may from time to time be provided by the Board of Directors . . . ." (*Id.* at 1 ¶ 5.) The patronage dividends are paid in the form of a combination of cash, Class B TruServ stock, and promissory notes. (*Id.* at 2 ¶ 2.) [5]

The Member Agreement contains a detailed integration clause. The clause states:

> That this Agreement, and any other agreement which Member signs with the Company, is the entire and complete Agreement between the Member and the Company and that there are no prior agreements, representations, promises, or commitments, oral or written, which are not specifically contained in this Agreement or any other agreement which Member signs with the Company. That the current form of the Company Member Agreement shall govern all past and present relations, actions or claims arising between the Company and the Member.

(Member Agreement, at 5 ¶ 9.) The Member Agreement does contemplate future amendments to the By-Laws; it requires that each member "comply with the Company's [TruServ's] By-Laws as may be amended from time to time," (*id.* at 3 ¶ 2), and further states that "this Agreement shall be automatically modified upon notice from the Company to the Member of any relevant change in the Certificate of Incorporation or By-Laws of the Company." (*Id.* at 5 ¶ 8.)

TruServ's 1997 By-Laws, in place at the time of the merger, provided for the redemption of members' stock upon their termination from the Corporation, conditioned only on the "legal availability" of funds:

> MANDATORY REDEMPTION. Upon termination of a Member Agreement . . . for any reason whatsoever, the stockholder shall sell to the Corporation and the

---

[5] TruServ's Class A and Class B stock are both common stock with a par value of $100, but the Class A stock is voting stock, while the Class B stock is non-voting stock. (Member Agreement, at 2 ¶¶ 3,6; Counterclaim ¶ 12.)

Corporation shall redeem from the stockholder all of its stockholder's capital stock in the Corporation for par value thereof upon the terms and conditions set forth in section 7 of this Article VII.

(1997 By-Laws, Exhibit B to Counterclaim, at 7, Article VII § 6(a).) Article VII of the 1997 By-Laws

provides that if funds were not "legally available" at the time of redemption, then the corporation

is bound to redeem the stock when funds became available and before paying any dividends.[6]  (*Id.*

at 8, Article VII § 7(c).) Specifically, the 1997 By-Laws state:

> LEGAL AVAILABILITY OF FUNDS. Should the funds of the Corporation legally available for such purpose be insufficient for immediate payment of all or any part of the redemption price, an agreement for purchase and sale of the stock shall be executed by the Corporation and the Terminated Stockholder pursuant to which the Corporation shall unqualifiedly undertake to pay all or the balance, as the case may be, of the redemption price as soon as funds are legally available for that purpose and further that no dividends or Patronage Dividends shall be declared and paid or set apart for payment to Members until after payment of the Terminated Stockholder of the full purchase price for such stock.

(*Id.*)

## Amendment to TruServ's Certificate of Incorporation

Until the Spring of 1998, TruServ's Certificate of Incorporation prohibited the Board of

Directors from amending the By-Laws on matters related to stock redemption without the approval

of the TruServ stockholders. (*Id.*) Specifically, the TruServ Certificate of Incorporation stated:

> The Corporation may be obligated or have the option to purchase or redeem its stock and stockholders may be obligated or have the right to sell their stock to the Corporation at par value in such circumstances and upon terms and conditions as may be specified in the By-Laws from time to time; *provided, however, that the stockholders shall approve any such provision in the By-Laws.*

(1997 Certificate of Incorporation, Exhibit 1 to TruServ's Motion to Dismiss, at 4.) (emphasis

added).[7]  In the Spring of 1998, however, at a TruServ annual stockholder meeting, TruServ

---

[6]     The parties have not defined the term "legal availability."

[7]     Documents referred to in a plaintiff's complaint but not attached that are central to
(continued...)

6

managers advocated a change to the Certificate of Incorporation that would provide the TruServ Board of Directors with expanded powers, including the right to amend the By-Laws regarding matters related to the redemption rights, without the approval of a majority of the members.[8] (Counterclaim ¶ 10.) The proposed amendment to the Certificate of Incorporation would have removed from the Certificate of Incorporation the language stating "provided, however, that the stockholder shall approve any such provision in the By-Laws." (Certificate of Amendment of Certificate of Incorporation, Exhibit 2 to TruServ's Motion to Dismiss, at 1.) As described below, however, letters from TruServ officers to members, urging passage of the amendment, made no mention of this change. There was no other change in the language of the certificate, but the Renningers nevertheless allege that they understood the sole purpose of the amendment was to allow TruServ to redeem newly-issued "nonqualified" Class B stock, which was not immediately taxable as income, at anytime.[9] (Counterclaim ¶ 10.) The amendment was put to a member vote and passed; the Renningers voted for the amendment. (Id. ¶ 35.)

On March 3, 1998, Daniel Burns, secretary of TruServ, addressed a letter to members in support of the proposed amendment to the Certificate of Incorporation. (Counterclaim ¶¶ 29- 30.) In this letter, Burns stated:

---

[7](...continued)
the plaintiff's claim, may be considered by the court in deciding a Rule 12(b)(6) motion, if those documents are attached to the defendant's motion to dismiss. *Duferco Steel, Inc. v. M/V Kalisti*, 121 F.3d 321, 324 n.3 (7th Cir. 1997).

[8]     The Renningers do not identify the date on which this amendment to the Certificate of Incorporation was proposed or approved.

[9]     The term nonqualified is defined in the Internal Revenue Code and applies to cooperatives and its members. (March 3, 1998 Letter from Kerry Kirby to TruServ Members, Exhibit 4 to TruServ's Motion to Dismiss, at 1.) The nonqualified Class B stock was not taxed until it was ultimately redeemed for cash. (Id.) This nonqualified Class B stock was issued by TruServ for the first time as part of the 1997 year-end patronage dividend. (Id.) Kirby announced the issuance of nonqualified Class B stock in the same letter he requested members' support for the proposed amendment. As described *infra*, Kirby's letter explained that the amendment would allow this new nonqualified Class B stock to be redeemed at anytime at TruServ's option. (Id.)

7

> This year, your 1997 year-end Patronage Dividend Statement will indicate that the
> year-end B Stock distribution is in "nonqualified" form. The enclosed letter from
> Kerry J. Kirby will more fully explain what this means to you. In simple terms, you
> will benefit by deferring tax on this B Stock distribution until these shares are
> someday redeemed for cash. To facilitate the redemption of the B Stock, you are
> being asked to approve an amendment to the Certificate of Incorporation which will
> permit the Board of Directors to amend the By-Laws of TruServ to make shares of
> nonqualified B stock redeemable at any time by the corporation for cash at the par
> value thereof.

(March 3, 1998 Letter from Daniel Burns to TruServ Members, Exhibit 3 to TruServ's Motion to

Dismiss.) Kerry Kirby, executive vice president and chief financial officer of TruServ, also drafted

a letter in support of the proposed amendment to the Certificate of Incorporation, in which he

explained that the purpose of the amendment was to allow TruServ added flexibility in redeeming

the nonqualified B Stock. (March 3, 1998 Letter from Kirby to TruServ Members, Exhibit 4 to

Memorandum in Opposition.)

> [t]o facilitate this redemption policy, you are being asked to approve, either by your
> proxy vote, or in person at the Annual Meeting on April 7th, an amendment to
> TruServ's Certificate of Incorporation which will permit the Board of Directors to
> amend the By-Laws of TruServ to make shares of nonqualified B stock redeemable
> at any time at the Corporation's option, for cash at par value.

(*Id.*) Finally, Kirby's letter advised members that "[i]f your membership is terminated, this non-

qualified B Stock will be redeemed at par value, for cash, at the time of termination." (*Id.* at 2.)

Neither Burns' letter nor Kirby's letter explained that the amendment would also permit TruServ to

refuse to redeem members' stock on demand.

According to the Renningers, TruServ falsely represented that this expanded power was

to be used solely to allow TruServ to redeem "nonqualified" Class B stock for cash at anytime.

(Counterclaim ¶ 10.) The Renningers further allege that they relied on TruServ's representations

explaining the amendment, and did not understand that the amendment to the Certificate of

Incorporation was actually pursued in order to excuse TruServ from the obligation to redeem

members' TruServ stock. (*Id.* ¶¶ 30, 35.) The Renningers claim in their Counterclaim that

"TruServ breached its fiduciary obligations to [the Renningers] by . . . procuring expanded Board

powers . . . without full disclosure of the information known to it at the time of its acts." (Counterclaim ¶ 48.)

**Guaranty Agreements**

A second basis for the Renningers' fraud claim relates to personal guaranties. The Renningers allege that on or shortly before February 2000, TruServ made misrepresentations to the Renningers which induced them to provide personal guaranties for the debts owed by Renninger Lumber Company to TruServ. (*Id.* ¶ 13.) Without identifying any specific misrepresentations, the counterclaim alleges that TruServ failed to disclose the true financial condition of the TruServ Corporation prior to the execution of the personal guaranties and failed to inform the Renningers that the Renninger Lumber Company's stock in TruServ would be devalued and unredeemable. (*Id.*) According to the Renningers, TruServ understood that the representations it made to members were false, knew that its omissions were misleading, and acted intentionally to mislead the Renningers by their misrepresentations and omissions. (*Id.* ¶¶ 33, 34.)

Relying on the misrepresentations and omissions of TruServ, the Renningers did execute the guaranties (the Counterclaim does not say when), and continued to remain a member of TruServ. (*Id.* ¶ 35.) Under the circumstances, the Renningers claim their reliance was both reasonable and justifiable and as a result of their reliance, they incurred and continue to incur substantial damages. (*Id.* ¶¶ 37-38.) The Renningers allege that obtaining personal guaranties from the Renningers without full disclosure of relevant information constituted a breach of TruServ's fiduciary obligations. (Counterclaim ¶ 48.) Finally, the Renningers assert that TruServ's misleading conduct was intentional and justifies an award of punitive damages. (*Id.* ¶ 38.)

**TruServ Loss Reported**

On or about March 2000, TruServ informed its members of $131 million in losses the

corporation had recently discovered. (*Id.* ¶ 14.) TruServ reported that the losses were the result of previously undisclosed accounting errors and unknown costs associated with the merger. (*Id.*) During March and April 2000, TruServ announced that it was devaluing its members' Class B stock by 65 percent as a result of the $131 million loss. (*Id.* ¶¶ 15-16.)    The Renningers allege this devaluation violates TruServ's By-Laws and Certificate of Incorporation, which do not expressly authorize TruServ to alter the par value of the Class B stock. (*Id.*) Without identifying any specific provisions that prohibit this conduct, the Renningers allege that by devaluing the Class B stock, TruServ violated the By-Laws, the Membership Agreement, and TruServ's fiduciary responsibilities to the Renningers. (*Id.* ¶ 16.)

On March 17, 2000, the Board of Directors passed a resolution which imposed a moratorium on TruServ member stock redemption.[10] (TruServ Special Meeting of the Board of Directors Friday, March 17, 2000, Exhibit 5 to TruServ's Reply in Support of its Motion to Dismiss, at 8.) Subsequently, on May 16, 2000, TruServ filed a 10-Q-Quarterly report, which reported that "[i]n view of the prior year financial results, the Company has initiated a moratorium on the redemption of its stock." (Counterclaim ¶ 17.) This statement also reported that the moratorium would be revisited by the TruServ Board of Directors depending on the financial status of the TruServ Corporation.[11] (*Id.*)

**Amended By-Laws**

In accordance with the Board's expanded authority under the amended Certificate of Incorporation, TruServ amended the By-Laws to alter the redemption rights of members and

---

[10]    TruServ Board resolutions modify the agreement between TruServ and its members in the same manner as an amendment to the By-Laws. (Member Agreement, at 5 ¶ 8.)

[11]    TruServ did not provide a specific date upon which the moratorium on stock redemption would be revisited by the Board of Directors. TruServ stated, instead, in its 10-Q-Quarterly Report that "[t]he Board of Directors will review the matter from time to time in light of the then current financial circumstances of the Company." (*Id.*)

provide greater discretion to the TruServ Board of Directors regarding the redemption of member stock. (2000 By-Laws, Exhibit C to Renningers' Opposition to TruServ's Motion to Dismiss Counterclaims and Strike Affirmative Defenses) (hereinafter, "2000 By-Laws.") The amended By-Laws became effective on July 15, 2000 and changed the name of the provision formerly called "MANDATORY REDEMPTION" to "TERMINATION REDEMPTION", but did not alter the language of the provision. (1997 By-Laws, Exhibit B to the Counterclaim, at 7, §6(a); 2000 By-Laws, at 7, §6(a).) The 2000 By-Laws did, however, effect a material change in Section 7(c) of Article VII of the 1997 By-Laws, which governed the scope of possible limitations on the redemption of terminated members' stock. Section 7(c) of Article VII in the 2000 By-Laws states:

> AVAILABILITY OF FUNDS. Notwithstanding anything to the contrary expressed or implied herein, should the Board of Directors in its discretion determine that the funds of the Corporation available for such purpose are insufficient for immediate payment of all or any part of the redemption price in light of the Corporation's legal or business requirements, or that immediate payment of all or any part of the redemption price is otherwise not in the best interests of the Corporation, the Corporation may delay (without interest) the payment of all or any part of the redemption price (including the issuance of any promissory note) until such time as the Board of Directors determines that sufficient funds are available for such purpose and that it is otherwise in the Corporation's best interests to recommence payments for such purpose, at which time the Corporation shall pay to those entitled thereto, in the chronological order in which such payments were delayed starting with those whose payment has been longest delayed and continuing until sufficient funds are no longer available, or through another equitable manner determined by the Board of Directors, the unpaid redemption price in accordance with Section 7(b), except that any promissory note shall be dated the date of its issuance.

(*Id.* at 7, §7(c).)

In a September 29, 2000 letter, Diane Nauer, secretary for TruServ, explained the purpose for amending the TruServ By-Laws.[12] (Counterclaim ¶ 31.) In her letter, Nauer stated "[a]ddditionally, the By-Laws were modified to better enable the Board to control the flow of payments to terminating stockholders in accordance with the legal and business needs of your

---

[12]    The counterclaim does not identify the person(s) to whom Nauer sent the September 29, 2000 letter.

cooperative. These modifications are consistent with TruServ's custom and practice." (*Id.*) The Renningers allege that Nauer misrepresented the purpose of the amended By-Laws; the true purpose of the amended By-Laws, the Renningers urge, was to allow the Board to put an end to stock redemption, precisely contrary to TruServ's custom and practice. (*Id.*)

Without identifying a specific date or triggering event, the Renningers allege that "in 2001," TruServ refused to redeem the Renningers' Class A or Class B stock. (Counterclaim ¶ 18.) The Renningers allege this refusal was a breach of the Member Agreement entered into by TruServ with the Renningers and a breach of TruServ's duties to the Renningers as stockholders. (Counterclaim ¶ 18.) Specifically, the Renningers allege, "TruServ breached its fiduciary obligations to [the Renningers] by their refusal to redeem Renninger Lumber's Class A and Class B stock at full par value . . . ." (Counterclaim ¶ 48.)

According to the Renningers, TruServ's By-Laws and Certificate of Incorporation do not authorize TruServ to impose any moratorium on the redemption of members' stock. (*Id.* ¶ 19.) Instead, the Renningers allege, even under the language of the By-Laws and Certificate of Incorporation as TruServ improperly reworked them, TruServ is required to redeem stock unless its Board of Directors determines that the corporation has insufficient funds available to pay for redemptions. (*Id.*) Having failed to cite insufficient funds as the reason for failing to redeem Renninger Lumber's stock, the Renningers argue, TruServ is not free to refuse redemption. (*Id.* ¶ 20.) The Renningers allege that TruServ failed to cite insufficient funds even though the moratorium on stock redemption was issued in response to a recently discovered $131 million loss from the 1997 merger. (*Id.* ¶¶ 14, 17.)

The counterclaim alleges that TruServ's actions resulted in direct and proximate damages to the Renningers in excess of $75,000, which includes the Renningers' loss of par value of Class A and Class B TruServ stock. (*Id.* ¶ 21.)

## DISCUSSION

As identified briefly earlier, TruServ's Counterclaim asserts five counts of wrongdoing: (1) that TruServ breached the Member Agreement it entered with the Renningers; (2) that TruServ officers and board members made false representations and omitted material facts to induce the Renningers to support TruServ's corporate actions and to execute personal guaranties; (3) that TruServ violated the Illinois Securities Act by making false representations regarding the merger in 1997 that formed TruServ and by supplying misinformation regarding stock redemption while continuing to issue stock; (4) that TruServ breached the fiduciary duty it owed to the Renningers in refusing to redeem their stock in the TruServ Corporation; and (5) that the Renningers were prevented from recouping their investment in TruServ because of TruServ's refusal to redeem their stock. TruServ has moved to dismiss all five counts for failure to state a claim for relief and to strike a number of the affirmative defenses raised by the Renningers.

On a motion to dismiss, this court accepts as true all well-pleaded facts and allegations in the plaintiff's compliant, and construes the complaint's allegations in the light most favorable to the plaintiff. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). To survive a motion to dismiss, a pleading need "only contain enough to allow the court and the defendant to understand the gravamen of the plaintiff's complaint." *McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir. 2000) (quoting *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999)). "Where allegations of a pleading are inconsistent with the terms of a contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991) (citations omitted). The court may not dismiss the Counterclaim unless the Renningers "can prove no set of facts that would entitle [them] to relief." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

13

With these standards in mind, the court addresses each of the Renningers' claims in turn.

**Count I: Breach of Contract Claim**

The Renningers allege that the express and implied terms of the Member Agreement between the Renningers and TruServ, the course of dealing and performance between the parties, and the implied duty of good faith in contract performance required TruServ to redeem the Class A and Class B stock held by the Renningers. By refusing to redeem this stock, the Renningers claim, TruServ breached its contractual obligations. (Counterclaim ¶ 24.) The Renningers also allege that TruServ violated the agreement between the parties by devaluing the Class B stock and imposing a moratorium on redemption. (Counterclaim ¶ 25.)

In asking the court to dismiss this breach of contract claim, TruServ argues that: (1) the claim fails because the Member Agreement contains no redemption requirements, (2) Illinois law does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing, and (3) TruServ's By-Laws do not confer any contractual rights because they are subject to unilateral modification by the Board of Directors.

The Renningers do not challenge TruServ's observation that the Member Agreement is silent regarding redemption rights. They argue instead that the By-Laws, which did include a provision regarding stock redemption, were incorporated into the Member Agreement by reference. *See Wilson v. Wilson,* 217 Ill. App. 3d 844, 853, 577 N.E.2d 1323, 1329 (1st Dist. 1991) (an instrument may incorporate another instrument by reference); *Providence Federal Sav. and Loan Ass'n. v. Realty Centre, Ltd.,* 97 Ill. 2d 187, 192-93, 454 N.E.2d 249, 261 (1983) (an instrument may incorporate another instrument by reference). Even accepting this argument , however, the court concludes that the Renningers have not alleged a breach of the By-Laws.

Any claim that rests on the enforceability of the By-Laws is undermined by the language of the relevant By-Laws themselves. Section 7(c) of the 2000 By-Laws provides that TruServ's Board

14

of Directors has the discretion over whether or not to redeem members stock based on the availability of corporate funds and the best interests of TruServ. (2000 By-Laws, at 7, §7(c)). Presumably to avoid this language, the Renningers invoke the 1997 By-Laws, but those By-Laws were not effective in 2001, when the Renningers allege TruServ denied redemption. The 2000 By-Laws, effective in July 2000, expressly permit TruServ to temporarily postpone stock redemption if it was in the best interest of the Corporation. (2000 By-Laws, at 7 §7(c).) The Renningers have challenged the validity of the amendments to the By-Laws, but that challenge forms the basis for their fraud claims and does not support a breach of contract claim.

For their second argument in support of the breach of contract claim, the Renningers urge that TruServ violated the duty of good faith and fair dealing. The Member Agreement states that "this agreement shall be automatically modified upon notice from the Company to the Member of any relevant change in the Certificate of Incorporation or By-Laws of the Company." (Member Agreement at 5, ¶ 8.) The Renningers acknowledge that this term in the Member Agreement provides TruServ with the right to amend the By-Laws and thus modify the agreement between the parties. They allege that TruServ breached the duty of good faith and fair dealing by amending the By-Laws in such a manner as to thwart the reasonable expectations of the Renningers that they would retain the right to demand that TruServ redeem their stock. TruServ argues that this claim should be dismissed because the Renningers failed to allege that it acted in bad faith or that the moratorium on stock redemption was contrary to their reasonable expectations.

Under Illinois law, "[e]very contract implies good faith and fair dealing between the parties to it." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1394 (7th Cir. 1991) (citations omitted). The party granted discretion to act under the contract is limited by the covenant of good faith and may only exercise its discretion reasonably, in good faith, and in a manner consistent with both parties' expectations. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443-44 (7th Cir. 1992); *Dayan v. McDonald's*, 125 Ill. App. 3d 972, 990, 466 N.E.2d 958, 972 (1st Dist. 1984). Illinois law,

15

however, does not provide for an independent cause of action for an alleged breach of an implied duty of good faith and fair dealing. *Voyles v. Sanida Mortgage Corp.*, 196 Ill. 2d 288, 293-94, 751 N.E.2d 1126, 1130-31 (2001); *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002). Instead, as the Renningers correctly note, the duty of good faith and fair dealing is "in aid and furtherance of other terms of the agreement of the parties" and is not an independent source of duties assumed by the parties. *Williams*, 944 F.2d at 1394 (quoting *Gordon v. Matthew Bender & Co.*, 562 F.Supp. 1286, 1290 (N.D. Ill.1983)).

TruServ argues, first, that the Renningers' factual allegations do not support an inference of bad faith on the part of TruServ. The court agrees. The Renningers have alleged that the change to the By-Laws and the Board decision to issue a moratorium on stock redemption was in response to TruServ's $131 million loss the previous year. (Counterclaim ¶ 14.) Imposing a moratorium in these circumstances does not demonstrate bad faith; to the contrary, such a decision may very well demonstrate that TruServ acted in good faith to protect the best interest of the corporation and its members.

In addition, TruServ argues that the Renningers could not reasonably have expected that the By-Laws would remain unchanged. TruServ cites *Steen v. Modern Woodmen of America*, 296 Ill. 104, 129 N.E. 546 (1921), an early but instructive case holding that a party does not have the right to presume that by-laws will remain unchanged when explicit language permits the organization to amend or change the by-laws. *Id.* at 111, 129 N.E. at 549. In *Steen*, the by-laws of a fraternal benefit society were amended after plaintiff's husband had purchased a death benefits certificate to provide that the disappearance of a member, without actual proof of death, is not a basis for recovery under the policy. *Id.* at 106-107, 129 N.E2d. at 548. After her husband disappeared and was presumed dead, the plaintiff challenged this amendment as an unreasonable alteration of the parties' agreement, but the court was not persuaded. Where the agreement between the parties provided the society with a clear and express right to amend the by-laws,

16

plaintiff had no right to rely on those by-laws and could not enforce the earlier language. *Id.* at 111, 129 N.E. at 549. *See also Horowitz v. Milk Wagon Drivers' Union, Local 753, Int'l Bhd of Teamsters, Chauffeurs, Stablemen & Helpers of America*, 341 Ill. App. 383, 386, 94 N.E.2d 95, 97 (1st Dist. 1950) (plaintiff did not reasonably rely on a union by-law pertaining to disability benefits in force at the time he became a union member, where the provision was later amended and plaintiff was on notice that by-law provisions could be amended).

TruServ argues that here, as in *Steen*, the parties' agreement anticipated periodic amendments to the by-laws and provided that these amendments would automatically modify the parties' agreement. Under these circumstances, TruServ urges, the Renningers could not reasonably have believed that the mandatory redemption provision of the 1997 By-Laws would never be altered. The Renningers respond only by pointing out that they had enjoyed redemption rights with Cotter under their previous member agreement and with TruServ itself, prior to issuance of the redemption moratorium. In light of the language in the Member Agreement expressly stating that the By-Laws were subject to change, however, the court is unable to infer that the Renningers had a reasonable expectation that these rights to redemption would never be altered.

The Renningers emphasize TruServ's alleged abuse of discretion. That word itself does not appear in the Member Agreement, but the Agreement does grant TruServ the right to modify the agreement by amending the By-Laws. Where an agreement gives one party discretion, that party may not exercise discretion in such a way as will thwart the reasonable expectations of the other contracting party. *Beraha*, 956 F.2d at 1443-44 (even in the absence of a "best efforts" clause, duty of good faith and fair dealing required defendant to act reasonably in marketing the plaintiff's product when defendant's duty to pay royalties to the plaintiff was not triggered until the product was marketed and sold); *Dayan v. McDonald's Corp.*, 125 Ill. App. 3d 972, 990, 466 N.E.2d 958, 971-72 (1st Dist. 1984) (where franchise agreement lacked express terms regarding termination, duty of good faith and fair dealing required the franchisor to terminate a franchisee

17

only for good cause).

As noted earlier, however, more recent cases explain that the implied covenant of good faith and fair dealing does not by itself create a duty, but instead, "guides the construction of explicit terms in an agreement." *Beraha*, 956 F.2d at 1443. Here, the Renningers are unable to identify an explicit provision of the Member Agreement that was breached in bad faith by TruServ; to the contrary, the By-Laws expressly authorize TruServ to refuse to redeem members' stock. The Renningers offer no basis for the court to conclude it was reasonable for them to believe that the Board would never exercise the discretion provided to it under the By-Laws. Nor do the Renningers' allegations suggest that TruServ acted in bad faith when it refused to redeem the Renningers' stock. The Renningers allege, instead, that TruServ refused to redeem their stock in light of the $131 million loss resulting from the merger. (Counterclaim ¶¶ 14, 17.) The court concludes that the implied covenant of good faith and fair dealing does not bolster their breach of contract claim.

The Renningers' invocation of the parties' prior course of dealing and performance does not change the analysis. Specifically, the Renningers suggest that they enjoyed a right of redemption in their prior relationship with TruServ and Cotter, and that this earlier understanding creates an obligation on the part of TruServ to redeem the Renningers' shares. TruServ argues that this claim fails because the contract was unambiguous and integrated and therefore precludes the addition of terms not included in the contract.

Illinois law follows the "four-corners" rule in contract interpretation and looks only "to the language of the contract to determine if it is susceptible to more than one meaning." *Benedict v. Federal Kemper Life Assur. Co.*, 325 Ill. App. 3d 820, 823, 759 N.E.2d 23, 26 (1st Dist. 2001), citing *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill.2d 457, 706 N.E.2d 882, 885 (1999). In *Benedict*, the court refused to consider extrinsic evidence in interpreting an insurance contract because the plaintiff could not demonstrate that the contract was ambiguous. 325 Ill. App. 3d 820, 824, 759

18

N.E.2d 23, 27-28. As previously noted, the Member Agreement at issue here contains a detailed integration clause and makes no reference to the redemption of stock for terminated members. (Member Agreement, at 5 ¶ 9.)   The Renningers do not allege that the Member Agreement is ambiguous, and "[i]f no ambiguity exists, the intention of the parties must be determined from the instrument itself." *C-B Realty and Trading Corp. v. Chicago and North Western Ry. Co.*, 289 Ill. App. 3d 892, 899, 682 N.E.2d 1136, 1142 (1st Dist. 1997). Thus, the court will not entertain an argument that would attempt to incorporate additional terms in the parties' agreement under a "course of dealing or performance" theory. The Renningers' breach of contract claim is dismissed without prejudice.

Finally, the Renningers' challenge to TruServ's devaluation of the Class B stock fails for similar reasons. The Renningers have not identified any specific provision of the Certificate of Incorporation or By-Laws that TruServ breached when it devalued the Class B stock. Accordingly, despite TruServ's disappointing failure to address the matter specifically, the court concludes that the Renningers' allegations are insufficient to state a breach of contract on this issue, as well, and dismisses any claim regarding devaluation without prejudice.

**Count II: Fraud Claim**

In Count II of their Counterclaim, the Renningers allege several fraud claims based on a number of misrepresentations and omissions of material fact made by officers and board members of TruServ. The elements of a cause of action for fraudulent misrepresentation are: (1) a false statement of material fact, (2) known or believed to be false by the party making it, (3) intent to induce the other party to act, (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Prime Leasing Inc. v. Kendig*, 332 Ill. App. 3d 300, 311, 773 N.E.2d 84, 94 (1st Dist. 2002). In contrast to the general liberal pleading standard, Rule 9 imposes a requirement that any claim of fraud must be pleaded with particularity. *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 468 (7th Cir. 1999); citing Fed. R.

19

Civ. P. 9(b).[13]

The Renningers have alleged fraud claims that relate to the merger, the amendment to the Certificate of Incorporation, and the amended By-Laws. First, the Renningers claim that TruServ and its predecessors made misrepresentations and omissions of material fact to induce them to approve the merger of ServiStar/Coast to Coast and Cotter & Company. The Renningers also allege that Kerry Kirby and Daniel Burns misrepresented the purpose of the amendment to the Certificate of Incorporation to induce the Renningers to vote in favor of the measure. In addition, they allege that Diane Nauer misrepresented the purpose and scope of TruServ's amended By-Laws. Finally, the Renningers allege that TruServ omitted material facts in order to induce the Renningers to remain members of TruServ and to execute guaranties for the debts Renninger Lumber owed to TruServ. TruServ has challenged each set of circumstances as insufficient to state a claim for fraud. The court examines them in turn.

A.    The Merger

The Renningers assert, first, that TruServ and its predecessors, Cotter & Company and ServiStar/Coast to Coast, omitted material facts and made false representations regarding the merger in an effort induce the Renningers to approve the merger. (Counterclaim ¶¶ 28, 35.) TruServ argues that this claim fails because the Renningers fail to set out the facts with enough particularity. The court agrees.

The Counterclaim fails to identify any specific representations made by TruServ to induce the Renningers to support the merger, nor does it state what material information was omitted at the time of the merger. The Renningers themselves have not offered any argument in reference to this issue in their memorandum. Thus, this fraud claim related to the merger is dismissed.

---

[13]    Federal Rule of Civil Procedure 9(b) states "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

20

## B.    Statements by Kirby and Burns

Second, the Renningers allege that Kirby and Burns made misleading statements concerning TruServ's proposed amendment to the Certificate of Incorporation, the amendment that eliminated the need for member approval before altering redemption rights.  As described above, Kirby's March 3, 1998 letter to members stated, "[i]f your membership is terminated, this nonqualified B stock will be redeemed at par value, for cash, at the time of termination. . . . To facilitate this redemption policy . . . you are being asked to approve . . . an amendment to TruServ's Certificate of Incorporation which will permit the Board of Directors to amend the By-Laws of TruServ to make shares of nonqualified B stock redeemable at any time at the Corporation's option, for cash at par value." (March 3, 1998 Letter from Kirby to members, Exhibit 4 to TruServ's Motion to Dismiss.) Similarly, Daniel Burns' March 3, 1998 letter to members stated, "[t]o facilitate the redemption of this B stock, you are being asked to approve an amendment to the Certificate of Incorporation which will permit the Board of Directors to amend these By-Laws of TruServ to make shares of non-qualified B stock redeemable at anytime by the corporation for cash at the par value thereof."    (March 3, 1998 Letter from Daniel Burns to TruServ Members, Exhibit 3 to TruServ's Motion to Dismiss.)  The Renningers allege that these statements were misleading because they falsely represented that the sole purpose of the amendment related to the "nonqualified" Class B stock. (Counterclaim ¶ 10.)

In response, TruServ agues that (1) it was unreasonable as a matter of law for the Renningers to rely on these statements, and (2) that the Renningers have not alleged that the statements were false.

### 1.    Reasonable Reliance

TruServ argues that these fraud claims fail because the Renningers could not reasonably rely on Kirby's and Burns' statements when the language of the amendment, provided to the Renningers, clearly indicated its function.  In the alternative, TruServ argues that the Renningers

21

could not reasonably rely on the prediction made by Burns and Kirby that the sole purpose of the amendment was to allow the Board to redeem the non-qualified Class B Stock.

In support of its first argument, TruServ cites *Cozzi Iron & Metal Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570 (7th Cir. 2001) and *Schmidt v. Landfield*, 20 Ill.2d 89, 169 N.E.2d 229 (1960). In *Cozzi*, plaintiff had signed a two-page form agreement for the lease of several photocopy machines. *Id.* at 573. The agreement included language stating that plaintiff was "UNCONDITIONALLY OBLIGATED TO PAY ALL MINIMUM MONTHLY RENTAL PAYMENTS" and had "NOT RELIED ON ANY STATEMENTS OWNER OR OWNER'S EMPLOYEES HAVE MADE." *Id.* In light of those written disclaimers, the court had little difficulty rejecting plaintiff's argument, made in reliance on an alleged oral representation from the defendant's agent, that plaintiff was excused from the minimum payment and responsible to pay only for the number of copies it had actually made. *Id.* at 573-74. The court determined that the plaintiff's fraud claim should be dismissed because as a matter of law its reliance on the oral statement of the defendant's representative was not justified. *Id.* at 575.

In *Schmidt*, the parties were joint holders of a purchase-money mortgage on property that defendant had incorrectly described to plaintiffs as a leasehold. When plaintiffs later learned that the property at issue was held in fee, they demanded additional money in exchange for surrendering their interest in the mortgage as part of a settlement of another dispute. *Id.* at 92, 169 N.E.2d at 231. Dismissing plaintiffs' fraud claim, the court observed that at the time of the settlement, plaintiffs did not rely on the representations of the defendant, but instead relied upon their own knowledge as well as the advice of counsel. *Id.* The court also made note that the settlement agreement included a clause which stated that the plaintiffs would not rely on past representations but on the explanations of their current attorney and their own knowledge. *Id.*

In this court's view, the *Cozzi* and *Schmidt* decisions do not establish that the Renningers' reliance was unreasonable as a matter of law. Unlike the lease agreement in *Cozzi* or the

22

settlement agreement in *Schmidt*, the Certificate of Amendment did not expressly contradict the representations made by TruServ. TruServ would have the court adopt a position that because the amendment was given to each member to review, members can not reasonably rely on the representations of officers or anyone else. Members' access to the draft amendment is a factor weighing in favor of TruServ on this issue, but it is not dispositive. "[J]ustifiable reliance . . . is a question of fact . . . to be determined by the finder of fact and not by the trial court as a matter of law." *Schrager v. N. Cmty. Bank*, 328 Ill. App. 3d 696, 709, 767 N.E.2d 376, 386 (1st Dist. 2002). The amendment removed the requirement that stockholders approve changes to the By-Laws regarding redemption rights of members. Burns and Kirby advocated for the amendment on the premise that it would allow the Board to redeem nonqualified Class B stock at anytime. Because the court does not find that the language of the amendment given to the Renningers expressly contradicted the representations made by Burns and Kirby, it is unwilling to find that the Renningers' reliance on those representations was unreasonable as a matter of law. At a minimum, the fiduciary duties Burns and Kirby owed to TruServ members prohibited them from misleading those members as to the purpose for the amendment.

An affirmative statement is not always required for a plaintiff to state a claim for fraud. *Washington Courte Condominium Association-Four v. Washington-Golf Corp.*, 267 Ill. App. 3d 790, 815, 643 N.E.2d 199, 216 (1st Dist. 1994). Illinois law recognizes that "fraud may also consist of the omission or concealment of a material fact if accompanied by the intent to deceive under circumstances which create the opportunity and duty to speak." *Id.* Although the Renningers have not alleged a claim of fraudulent omission related to Kirby's and Burns' statements, their factual allegations are consistent with the theory that as fiduciaries to the Renningers, Kirby and Burns had a duty to inform TruServ members regarding the full scope of the proposed amendment.

The court notes, further, that under the federal securities laws, courts have construed the existence of a fiduciary relationship between the parties as a factor that supports an investor's

23

reliance on a defendant's statement. *Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263, 272 (6th Cir.1998); *Bruschi v. Brown*, 876 F.2d 1526, 1529 (11th Cir.1989); *Jackvony v. RIHT Financial Corp.* 873 F.2d 411, 416 (1st Cir.1989). Although the Renningers are not invoking the federal securities law in this lawsuit, the court believes that the fiduciary relationship that existed between the Renningers and TruServ, at the time of Burns' and Kirby's statements, is also a factor that supports their reliance on these statements and militates against a conclusion that their reliance was unreasonable as a matter of law.

## 2. Statements of Fact or Opinion

Next, TruServ argues that the fraud claims fail as a matter of law because the statements made by both Kirby and Burns are opinions or predictions of future events and thus not actionable as fraudulent statements. Under Illinois law statements of opinion or future intent will not support an action for fraud; instead, a misrepresentation must relate to present or pre-existing facts to be actionable. *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 309, 773 N.E.2d 84, 92 (1st Dist. 2002) (noting that even a false promise of future conduct is not actionable); *Parker v. Arthur Murray*, Inc., 10 Ill. App. 3d 1000, 1004, 295 N.E.2d 487, 490 (1st Dist. 1973) (statements that plaintiff had "exceptional potential" and was a "natural born dancer" were insufficient to support a fraud claim); *Hurley v. Frontier Ford Motors, Inc.*, 12 Ill. App. 3d 905, 912, 299 N.E.2d 387, 392 (2nd Dist. 1973) (buyer of a used car did not have the right to rely on the allegedly fraudulent statement of the defendant that he would pay for repairs).

In response, the Renningers characterize Kirby's and Burns' statements as expressions of present fact, explanations of the purpose of the amendment at the time it was passed. Even if the court were to agree with TruServ that the statements by Kirby and Burns are opinions, however, dismissal would not be warranted on this basis. Illinois law recognizes an exception to the rule that opinion statements are not actionable in circumstances where the individual making the statement is a person with special knowledge. *West v. Western Casualty and Surety Co.*, 846 F.2d 387, 394

24

(7th Cir. 1988) (statement that plaintiff had no right to recover for a work related injury except for workers' compensation held to be a statement of fact when made by employer's workers' compensation carrier). In this case, the statements were made by officers of the corporation advocating for an amendment that gave TruServ greater authority over the redemption of stock. It is reasonable, at this point in the litigation, to believe that these individuals had special knowledge regarding the amendment because of their role as TruServ officers and advocates for this amendment. Thus, the court will not dismiss the claims as a matter of law because they represent opinions.

Finally, TruServ argues that the Renningers have not alleged that the statements are false. In their Counterclaim, however, the Renningers alleged that the statements are false because TruServ did not in fact redeem their Class B Stock in 2001. (Counterclaim ¶ 18.) More importantly, as stated previously, the Renningers assert that the challenged statements were incomplete and misleading; the Renningers allegedly believed that the amendment to the Certificate of Incorporation was to be used solely to allow the Board to amend the By-Laws to redeem nonqualified Class B stock at anytime (Counterclaim ¶ 10), when in reality it was also intended to prohibit the Renningers from demanding redemption of their own stock. The question presented here is a close one. The only change in the Certificate was elimination of language requiring member approval before any change in stock redemption procedures, yet the Renningers argue that TruServ officials concealed this change from them. Nevertheless, in light of Kirby's and Burke's responsibility to be forthcoming with members and what appears to be a deliberate effort to divert members' attention, the court declines to dismiss this claim at the pleading stage.

## C. Nauer's Statement

The Renningers' third claim of fraud rests on Diane Nauer's statement in her letter dated September 29, 2000 that "[a]dditionally, the By-Laws were modified to better enable the Board to control the flow of payments to terminating stockholders in accordance with the legal and business

25

needs of your cooperative. These modifications are consistent with TruServ's custom and practice." (Counterclaim, at ¶¶ 29-31.) The Renningers allege that this statement is fraudulent because the amendment was not consistent with TruServ's custom and practice and the true purpose of the amended By-Laws was to allow the Board to place a moratorium on member stock redemption, contrary to the rights of members.

TruServ argues that the Renningers' fraud claim based on Nauer's statement fails because the Renningers have not sufficiently alleged that they relied on the statement. The court agrees. The statement made by Nauer was part of a September 29, 2000 letter explaining the modifications to TruServ's By-Laws, which as described above expanded the powers of the Board to deny the redemption of members' stock.[14] The By-Laws became effective in July 2000 and the moratorium became effective at the latest in May 2000. (Counterclaim ¶17; 2000 By-Laws.) Nauer was commenting on the previously enacted 2000 By-Laws and the moratorium, which had already been announced by TruServ. The Renningers can not allege that they relied on Nauer's statement in choosing not to seek redemption of their stock; at the time Nauer made her statement the Renningers already lacked any avenue to seek redemption. Thus, this court will dismiss this fraud claim without prejudice because the Renningers have failed to allege reliance.

### D.    Guaranty Agreement

Finally, the Renningers assert that they were induced by TruServ's misrepresentation and omissions of material fact to provide guaranties for the debts owed by Renninger Lumber Company to TruServ. TruServ responds that the Renningers' fraud claim pertaining to the guaranties fails as a matter of law because in executing the guaranties, the Counterplaintiffs acknowledged that their obligation was "continuing, absolute, and unconditional" and because the guaranty

---

[14]     TruServ argues that the moratorium on stock redemption began on March 17, 2000 when the Board passed a resolution placing a moratorium on member stock redemption. The court, however, need not resolve exactly when the moratorium began because Nauer's letter came after both the resolution and the amendment to the By-Laws.

agreements also included an integration clause. (Motion to Dismiss at 27.) TruServ argues, further, that the Renninger's fraud claims related to the guaranties lacks specificity sufficient to state a claim of fraud. The court finds this argument dispositive.

As TruServ notes, the Renningers have failed to allege any representations that induced them to enter into the guaranty agreement. Instead, the Renningers focus on their allegation that TruServ omitted material facts, specifically, that TruServ failed to inform the Renningers of TruServ's poor financial condition prior to their agreeing to guaranty the debts of Renninger Lumber.

In order for the Renningers to properly allege a material omission, Illinois law provides that "[t]he concealment may not be a passive omission of facts during a business transaction but must have been done with the intent to deceive under circumstances creating an opportunity and duty to speak." *Farm Credit Bank of St. Louis v. Isringhausen*, 210 Ill. App. 3d 724, 731, 569 N.E.2d 235, 240 (1991). Even assuming that TruServ had a duty to speak in the circumstances provided here, the court notes that the Renningers have not explained how TruServ's omission was material to their decision to enter the guaranty agreements. In connection with executing the guaranties with TruServ, the Renningers were taking personal responsibility for the goods and services provided by TruServ to Renninger Lumber. Renninger Lumber's solvency was presumably relevant to the Renningers' decision to execute personal guaranties, but the Renningers do not explain how TruServ's financial condition had any bearing on that decision. Finally, if TruServ's financial soundness were relevant to the Renningers' willingness to execute guaranties, their failure to identify with specificity the dates and times of any misrepresentations about these matters, or even the dates on which the guaranties were executed, would defeat their fraud claim which, as noted, carries heightened pleading requirements. Thus, the court dismisses the fraud claims related to the guaranties without prejudice.

**Count III: Illinois Securities Act**

In Count III of the Counterclaim, the Renningers allege that TruServ violated the Illinois Securities Act by misrepresenting material facts and omitting material facts in connection with encouraging the Renningers to approve the merger of ServiStar/Coast to Coast and Cotter in 1997, to approve the change in board powers in 1998, and to execute personal guaranties in 2000. In addition, the Renningers claim that TruServ made misrepresentations in issuing Class B stock throughout 2000 and 2001 as if the stock would be redeemed promptly upon request. (Counterclaim ¶ 43.) TruServ does not challenge the sufficiency of this count. TruServ does argue that the claim is time-barred under the Illinois Securities Act. The statute provides that:

> No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after 3 years from the date of sale; provided, that if the party bringing the action neither knew nor in the exercise of reasonable diligence should have known of any alleged violation of subsection E, F, G, H, I or J of Section 12 of this Act which is the basis for the action, the 3 year period provided herein shall begin to run upon the earlier of:
> (1) the date upon which the party bringing the action has actual knowledge of the alleged violation of this Act; or
> (2) the date upon which the party bringing the action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of this Act; but in no event shall the period of limitation so extended be more than 2 years beyond the expiration of the 3 year period otherwise applicable.

815 ILCS 5/13 (D).

Both parties recognize that this statute of limitations is also applicable to all of the Renningers' fraud and fiduciary duty claims that relate to the merger and amendment to Certificate of Incorporation. *See Tregenza v. Lehman Brothers, Inc.*, 287 Ill. App. 3d 108, 110, 678 N.E.2d 14, 15 (1st Dist. 1997) (Illinois Securities Act's statute of limitations bars not only statutory claims but also common law actions arising out of securities transactions).

The dispute here relates to the date on which the limitations period should start to run. TruServ argues that the limitations period began to run in 1997 when the merger took place, for the claims related to the merger, and in 1998 when the amendment was passed, for the claims related to the amendment. The Renningers, however, argue that they did not have notice of the

falsity of the statements made by officers and board members of TruServ until the corporation announced the redemption moratorium on May 16, 2000. (Counterclaim ¶ 17.) If the Renningers are correct and the limitations period is deemed to run from May 16, 2000, they are not time barred because they filed their claim on April 8, 2002, well within the three year period.  In the Counterclaim, the Renningers have alleged that they first learned of TruServ's alleged fraud on May 16, 2000, when the moratorium on stock redemption was announced.  The court will take all of the Renningers' well pleaded allegations as true and thus finds, for the purposes of this motion, that the Renningers first learned of the alleged fraud related to the amendment on May 16, 2000.

For reasons already explained, the court need not determine when the statute of limitations began to run in relation to the Renninger's claim involving the merger: the Renningers have not identified any misstatements of material fact or omitted information that they relied upon in voting for the merger. In relation to the remaining claim regarding the amendment, TruServ argues that even if the Renningers first had notice as late as May 16, 2000, the claim still fails because they were still required to file within the expiration of the original limitations period. See McCool v. Strata Oil Co., 972 F.2d 1452, 1461 n.8 (7th Cir. 1992) (observing that under Illinois law "the period of fraudulent concealment does not automatically extend the limitations period: if the plaintiff discovers her cause of action within a reasonable period before the normal limitations period expires, she must sue within that period," while under federal law the plaintiff enjoys the full benefit of the delay resulting from the defendant's fraudulent concealment); see also Anderson v. Wagner, 79 Ill.2d 295, 322, 402 N.E.2d 560, 573 (1980) (statute of limitations on a medical malpractice action is not tolled if the plaintiff discovered her claim within a reasonable time before the expiration of the statutory period).

Although the court is applying Illinois law in this matter, the court does not believe that the reasoning in McCool or Anderson operate as a bar to the Renningers' claims. McCool addresses the application of the statute of limitations as a matter of Illinois common law. Statutory language, however, controls the disposition of the matter in this case. The Illinois Securities Act statute of

29

limitations expressly allows three years for a plaintiff to bring a lawsuit from the date of sale, unless the plaintiff did not know or could not discover the violation. In this instance, the limitations period begins to run from the earlier of the date the plaintiff actually knew or reasonably should have known of the violation. Drawing every inference in favor of the Renningers, the court finds that they have properly alleged that it was not possible through reasonable diligence to discover TruServ's alleged fraud prior to May 16, 2000.

## Count IV: Breach of Fiduciary Duty

Count IV of the Counterclaim alleges a breach of fiduciary duty based on TruServ's failure to redeem the Renningers' stock, its misrepresentations regarding the expansion of board authority, and its omission of facts in procuring the Renningers' guaranty agreements. In seeking to dismiss these fiduciary duty claims, TruServ argues that these claims are a mechanical application of the breach of contract claims and fraud claims previously alleged by TruServ. The court disagrees. The Renningers have sufficiently alleged a claim for breach of fiduciary duty pertaining to these claims.

In order to properly state such a claim, the plaintiff must allege: (1) that a fiduciary duty exists; (2) this duty was breached; and (3) that the breach proximately caused the injury to the plaintiff. *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 313, 773 N.E.2d 84, 96 (1st Dist. 2002). Here, the Renningers have alleged that TruServ owed them a fiduciary duty as stockholders, which required them to act in the best interest of TruServ members. Illinois law recognizes that officers and board members have a fiduciary duty to both the corporation and the shareholders. *Anest v. Audino*, 332 Ill. App. 3d 468, 476, 773 N.E.2d 202, 209 (2nd Dist. 2002). Second, the Renningers have alleged that this duty was breached when TruServ: pursued expanded powers for the Board; failed to fully disclose the cooperative's financial condition prior to the Renningers' execution of the guaranty agreements; and failed to redeem the Renningers' stock. Finally, the Renningers have alleged that the breach of fiduciary duty has prevented them from redeeming their TruServ stock.

30

With the exception of the claim related to the guaranty agreements, the court finds that the Renningers have properly stated a claim for breach of fiduciary duty. As the court stated previously, the Renningers have not explained how the financial condition of TruServ is relevant to the Renningers' decision to guaranty the debts of Renninger Lumber. For this reason, the breach of fiduciary duty claim as it relates to the guaranty agreements is dismissed without prejudice. TruServ's motion to dismiss Count IV is otherwise denied.

## Count V: Recoupment

In their claim for recoupment, the Renningers allege that they have made substantial investments as members of TruServ, through both capital investments and their acceptance of Class B stock as a purchase dividend, in reliance on a continuing relationship with TruServ. The Renningers further allege that TruServ has prevented them from recouping their investment by refusing to redeem their stock.

TruServ argues that this claim should be dismissed because it is unreasonable as a matter of law for Renninger Lumber to expect to continue a business relationship with TruServ when it failed to pay for the merchandise and services it received. In support of this argument TruServ references two provisions of the Member Agreement that detail a member's obligation to pay for merchandise and TruServ's authority to terminate.[15] (Member Agreement, at 3 ¶ 3, at 5 ¶ 5.)

"Recoupment is in the nature of a cross-action in which a defendant alleges that it has been injured by a breach by plaintiff of another part of the contract on which the action is founded." *Cox v. Doctor's Associates, Inc.*, 245 Ill. App. 3d 186, 199, 613 N.E.2d 1306, 1315 (5th Dist.1993). The only allegations that the Renningers assert, however, are that they made substantial investments

---

[15]     As part of the Member Agreement, the member agrees "[t]o pay on the date due all invoices on accounts receivable statements and any other financial obligations to the Company and subsidiaries . . . ." (Member Agreement, at 3 ¶ 3.)  In addition, under the Member Agreement, the member and company agree that "[t]he Company shall have the right to immediately terminate this Agreement by written notice to the Member, . . . [if the Member] breaches any term, condition or obligation under this Agreement . . . ." (*Id.* at 5 ¶ 5.)

in TruServ and now they are prevented from redeeming that investment because TruServ will not redeem their stock. Moreover, as explained earlier, the court has concluded that the Renningers have not alleged a breach of contract on the part of TruServ. The court is uncertain how these limited and vague allegations state a claim for recoupment. For these reasons, the Renningers' recoupment claims is dismissed without prejudice.

## Affirmative Defenses

TruServ has also asked the court to strike a number of the affirmative defenses raised by the Renningers. TruServ has not expressly argued the grounds for striking these counterclaims but instead has included footnotes which state that its argument to dismiss certain counts in the Counterclaim also support its motion to strike a number of affirmative defenses.

The court will strike affirmative defenses only "when they are insufficient on the face of the pleadings." Williams v. Jader Fuel Company, Inc., 944 F.2d 1388, 1400 (7th Cir. 1991) (citations omitted). A motion to strike is "not favored and will not be granted unless it appears to a certainty that plaintiffs succeed despite any state of the facts which could be proved in support of the defense. . . and are inferable from the pleadings" Id. (citations omitted). In a case in federal court based on diversity jurisdiction, such as this case, "the legal and factual sufficiency of an affirmative defense is examined with reference to state law." Id. (citations omitted). Federal district courts will grant a motion to strike if the affirmative defense is insufficient as a matter of law or if it fails to present a question of law or fact. Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989). Lastly, "[a]ffirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." Id.

TruServ argues, first, that because the claim for breach of contract alleged by the Renningers fails, a number of affirmative defenses must also fail. Specifically, TruServ challenges the defenses of material breach, anticipatory repudiation, setoff, and unclean hands. (See

32

Counterclaim, at 14-15 ¶¶ 1, 2, 5, 12.)

For the reasons set forth above, the court concludes that Renningers have not alleged a breach of contract claim against TruServ as part of their Counterclaim. For this reason, the court strikes the affirmative defenses related to TruServ's material breach and anticipatory repudiation. At this point, the Renningers have been unable to allege any breach by TruServ. "An anticipatory repudiation is a definite statement by one contracting party to the other that it will not perform its contractual duties, unless such statement is justified." *Curtis Casket Co. v. D.A. Brown & Co.*, 259 Ill. App. 3d 800, 806 (1st Dist. 1994). The Renningers have not alleged any statement or act on the part of TruServ demonstrating its intent not to perform under the terms of the Member Agreement. The court strikes these claims without prejudice.

In addition, the court strikes the affirmative defense of unclean hands. "The equitable doctrine of unclean hands provides that a party seeking equitable relief cannot take advantage of his own wrong." *Northern Trust Co. v. VIII South Michigan*, 276 Ill. App. 3d 355, 368, 657 N.E.2d 1095, 1105 (1st Dist. 1995). "For a court to invoke the 'unclean hands' doctrine, such conduct must be directly involved in the very transaction at issue before the court." *Yugoslav-American Cultural Center, Inc. v. Parkway Bank and Trust Co.*, 327 Ill. App. 3d 143, 152, 763 N.E.2d 360, 398 (1st Dist. 2001). The transaction at issue in TruServ's complaint relates to the Member Agreement and whether the Renningers are obligated to pay for merchandise and services received from TruServ pursuant to that agreement. Because the Renningers allege unclean hands in relation to the amendment to the Certificate of Incorporation, not the Member Agreement, the court dismisses this affirmative defense without prejudice.

The court declines to strike the affirmative defenses of setoff. The Renningers have requested a setoff of the damages they allegedly owe TruServ as a result of their breach. The court will not strike this affirmative defense as it is possible that if the Renningers prevail on their fraud claim that they may be entitled to a setoff for the amounts they invested in TruServ. *Lake*

33

*County Grading Co. of Libertyville, Inc.* v. *Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d. 452, 462, 654 N.E.2d 1109, 1118 (1st Dist. 1995) (set off is "a counterdemand interposed by a defendant against a plaintiff in a lawsuit, arising out of a transaction extrinsic to plaintiff's cause of action").

TruServ next argues that because the fraud claims alleged by the Renningers fail as a matter of law, the court should strike three affirmative defenses relating to fraud. The affirmative defenses at issue here are: that TruServ's claim is barred because of its fraudulent misrepresentations and omissions of material fact to induce the Renningers to enter the Member Agreement and to remain a member of TruServ, that TruServ is barred from pursuing its claims because of the doctrine of promissory estoppel, and again that TruServ's claims are barred by the doctrine of unclean hands. (Counterclaim, at 15-16 ¶¶ 3, 11, 12.) For the reasons set forth above, the court strikes the Renninger affirmative defense of unclean hands. In addition, the court will strike the Renningers' affirmative defense alleging that TruServ made false statements or omissions to induce the Renningers to enter the Membership Agreement. As noted earlier, the Renningers have not alleged any misstatements or omitted information by TruServ related to the Membership Agreement. Because the court denied TruServ's motion to dismiss the Renningers' fraud claim, the remaining affirmative defense of promissory estoppel will stand.

TruServ maintains that as a matter of law the Renningers' reliance on statements or omissions by TruServ in entering the guaranty agreements was unreasonable. As a result, TruServ asks the court to strike the Renningers' affirmative defense that TruServ's claims are barred because its fraudulent misrepresentations and omissions induced the Renningers to enter the guaranty agreements. (Counterclaim, at 15 ¶ 4.) As stated previously, the Renningers have not explained how TruServ's financial condition was material to their decision to enter the guaranty agreements. For this reason, the court will also strike the affirmative defense (number four) related to the guaranty agreements.

Lastly, TruServ argues that the fiduciary duty and recoupment claims fail and as a result

34

the court should strike the Renningers' affirmative defenses that TruServ's claims should be partially setoff for recoupment. (Counterclaim, at 15 ¶ 10.) The court will not strike this affirmative defense because the court determined that the Renningers properly stated a claim for a breach of a fiduciary duty and they may be eligible for a setoff in relation to these claims.

## CONCLUSION

For the reasons set forth in this opinion, the court grants TruServ's motion to dismiss (Doc. No. 24-1) as to Renningers' Count I (Breach of Contract) and Count V (Recoupment). With respect to the remaining Counts, Count II (Fraud), Count III (Illinois Securities Act), and Count IV (Breach of Fiduciary Duty), the motion is granted in part and denied in part. In addition, the court grants TruServ's motion to strike (Doc. No. 24-2) affirmative defenses 1, 2, 3, 4 and 12 but denies the motion to strike defenses 5, 10, and 11.

ENTER:

Dated: February 3, 2003

REBECCA R. PALLMEYER
United States District Judge

35